UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SHAWN CAMERON SPRINGER,<br><br>Petitioner,<br><br>vs.<br><br>ROBERT DOOLEY, Warden;<br>and MARTY JACKLEY, Attorney General of<br>the State of South Dakota,<br><br>Respondents. | 3:15-CV-03008-RAL<br><br><br><br>OPINION AND ORDER GRANTING<br>RESPONDENTS' MOTION TO DISMISS |

Petitioner, Shawn Cameron Springer (Springer), filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus alleging that his 261-year sentence with the possibility of parole is cruel and unusual punishment violating the Eighth Amendment and contravening the holdings of Graham v. Florida and Miller v. Alabama. Doc. 1. Springer also moved for a hearing on his petition. Doc 11. Respondents, Robert Dooley, Warden of Mike Durfee State Prison, and Marty Jackley, Attorney General of the State of South Dakota, moved to dismiss Springer's petition, arguing that the petition is time-barred under the Antiterrorism and Effective Death Penalty Act (AEDPA). Docs. 13, 14. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has reviewed the record, including the answer and record of state proceedings, and has determined that an evidentiary hearing is not warranted. For the reasons explained below, a 261-year sentence imposed on Springer with the possibility of parole does not contravene the provision of the Eighth Amendment prohibiting cruel and unusual

1

punishment as interpreted in Graham and Miller. Therefore, Respondents' motion to dismiss is granted.

I.     PROCEDURAL BACKGROUND

As a juvenile, Springer pleaded guilty to Kidnapping—a Class 1 felony in violation of S.D.C.L. § 22-19-1(2) (1996) which carried a maximum penalty of life in prison without parole[1]—as part of a plea agreement whereby other charges, including first-degree murder, were dismissed. Doc. 14-1 at 1. Springer and his co-defendant Paul Dean Jensen had planned, kidnapped, and robbed Michael Hare, and Jensen, with Springer present, then murdered Hare.[2] On October 15, 1996, Judge Max A. Gors of the Sixth Judicial Circuit of the State of South Dakota held a sentencing hearing where Springer's counsel advocated that Springer was only sixteen at the time of the offense, that he was smart, could be rehabilitated, and eventually would be able to give back to society. South Dakota v. Springer, 2014 SD 80, ¶ 4, 856 N.W.2d 460, 461–62; Doc. 14-1. Springer's counsel also argued that Springer lacked proper guidance, did not have an appropriate father figure, and experienced a disadvantaged upbringing. Id. The State countered that Springer had planned the robbery and murder, did not stop Jensen from killing the victim, lied in initial statements to authorities, lacked remorse, had a previous criminal record, and was a poor prospect for rehabilitation. Springer, ¶ 4, 856 N.W.2d at 461–62. The presentence investigation prepared for Springer's sentencing hearing included detailed information about Springer's family life and history, his prior record, financial condition, and the circumstances of the offense. Id. ¶ 4 n.1, 856 N.W.2d at 462.

Judge Gors orally announced his sentencing determination from the bench:

---

[1] Under S.D.C.L. § 24–15A–32 (both the present and 1996 form), a defendant who receives a life sentence is "not eligible for parole."
[2] A more complete factual background of the kidnapping and ultimate murder of Michael Hare can be found at South Dakota v. Jensen, 1998 SD 52, 579 N.W.2d 613.

> There are a number of factors which I'm going to take into consideration. Some fall on the side of being harsh, and some fall on the side of being lenient. One that falls on the harsh side is the overriding consideration in any sentence like this, is that Michael Hare is dead, and he can't ever come back.
>
> I think it's also clear from the evidence that this terrible crime was planned, and that Mr. Springer had a part in the planning, the robbery part at a minimum.
>
> On the other hand, Mr. Springer did not shoot Mr. Hare. Mr. Springer did plead guilty to [kidnapping]. Mr. Springer did save the time and expense of a trial. Mr. Springer also saved the Hare family one trial to have to go through.
>
> He did testify against Mr. Jensen, whether his testimony was helpful or not, is hard to say. My estimate of the State's case against Paul Jensen was that the State would have won it with or without Mr. Springer's testimony.
>
> And I think that Mr. Springer is at least to all appearances beginning to be contrite in his conduct.
>
> Because of all these factors, I am going to impose a sentence in this case that may be a life sentence, but it may not be. I do think that ultimately there is a possibility of rehabilitation in a person so young. So I'm going to give him a term of years rather than a life sentence without parole.
>
> Accordingly, Mr. Springer, it will be the judgment of the court that you spend 261 years in prison. There to be fed, clothed, and housed at the expense of the State of South Dakota.
>
> You're under the old system of sentencing parole because your crime was committed prior to July 1st of 1996. 261 years translates to a flat time sentence of 132 years, which I believe is beyond your lifetime, and so in effect this is a life sentence.
>
> But there is also a glimmer of hope down the road, because with your being a first-time offender, you would be eligible for parole, by my calculations, at the conclusion of 33 years. That gives you an opportunity to convince someone in the future that you can be trusted to be back out of prison. I think that the factors that you—that I considered in mitigation of this sentence require that you have that opportunity at some point.

Id. ¶ 5, 856 N.W.2d at 462–63 (alteration in original) (footnote omitted).

Judge Gors then informed Springer that the time for taking an appeal was thirty days and ordered attorney Steven Smith "be appointed to discuss any appeal issues with [Springer] and handle any appeal should one be filed." Doc. 14-1 at 2. Springer did not file a direct appeal

3

after his conviction and sentence. Instead, Springer filed a Motion to Modify Sentence, which Judge Gors denied on October 10, 1997.[3] Docs. 14-2, 14-3.

More than thirteen years later, Springer filed a pro se Petition for Writ of Habeas Corpus in the Sixth Judicial Circuit of the State of South Dakota on November 2, 2010, and requested court-appointed counsel. Docs. 14-5, 14-6. After considering the writ and memorandum in support, which was filed by Springer's appointed counsel Jamie Damon, Judge John Brown entered an Order Denying Springer's Writ of Habeas Corpus on December 11, 2012. Doc. 14-7. Judge Brown dismissed the writ with prejudice, found no appealable issue under S.D.C.L. § 21-27-18.1, and did not issue a certificate of probable cause. Doc. 14-7.

On November 29, 2012,[4] Springer filed a Motion to Correct an Illegal Sentence in the Sixth Judicial Circuit of the State of South Dakota challenging Judge Gors's Judgment of Conviction and requested a hearing and court-appointed counsel. Doc. 14-8. A hearing was held before Judge Kathleen F. Trandahl where Springer was again represented by appointed counsel Jamie Damon. Doc. 14-9. After reviewing the motions, record, and considering arguments and

---

[3]Springer only filed one Motion to Modify Sentence. That motion was filed on November 21, 1997, more than a month *after* Judge Gors had already issued an order denying "Springer's motion for reduction of sentence." Docs. 14-2, 14-3. Arguably, either a different motion to reduce sentence was filed before October 10, 1997, and not included in the record, or the motion in the record was file stamped after the order was filed. Respondents claim the latter approach. The filing date of the motion, however, does not change the fact that Springer's petition is still untimely under AEDPA. Respondents even generously calculated tolling for the discrepancy, and still found the AEDPA statute of limitation expired "on or about January 30, 1998." Doc. 14 at 4.

[4]The Stanley County filing stamp is not entirely legible—the day could be read as either November 23, 28, or 29. See Doc. 14-8 at 2. The subsequent Order denying Springer's Motion to Correct an Illegal Sentence, however, begins, "On November 29, 2012, [Springer] filed with the court a Motion to Correct an Illegal Sentence." Doc. 14-9. Thus, the date of November 29, 2012, is used for calculating tolling. Even if the date was November 23 or 28, Springer's time for filing under AEDPA would still have expired.

authorities presented at the hearing, Judge Trandahl entered an Order Denying Springer's Motion to Correct Illegal Sentence on June 28, 2013. Doc. 14-9.

The Supreme Court of South Dakota affirmed Judge Trandahl's ruling on November 12, 2014, and held that Springer's sentence was not a violation of the Eighth Amendment's prohibition on mandatory life without parole sentences for juveniles because Springer would be eligible for parole at the age of 49. Springer, ¶¶ 16–25, 856 N.W.2d at 466–70. The court reasoned that Springer's 261-year sentence is not the functional equivalent of a life sentence (i.e., a de facto life sentence), that his parole eligibility did not exceed his life expectancy, and that he had a meaningful opportunity for parole. Id. ¶¶ 19–24, 856 N.W.2d at 467–70. In so finding, the court declined to determine whether Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012) (holding that the Eighth Amendment forbids sentencing schemes that mandate life in prison without parole for juveniles), Graham v. Florida, 560 U.S. 48, 74 (2010) (holding that the imposition of life without parole for nonhomicide juvenile offenders is prohibited by the Eighth Amendment), and Roper v. Simmons, 543 U.S. 551, 568 (2005) (forbidding the imposition of the death penalty on juvenile offenders) are "applicable or inapplicable to de facto life sentences." Id. ¶ 25, 856 N.W.2d at 470. The Supreme Court of the United States denied Springer's petition for writ of certiorari on April 27, 2015. South Dakota v. Springer, 2014 SD 80, 856 N.W.2d 460, cert. denied, 135 S. Ct. 1908 (2015).

Springer then filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this Court on May 20, 2015.[5] Doc. 1. Following a preliminary review of the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District

---

[5]Springer filed an additional Petition for Writ of Habeas Corpus on June 1, 2015. Doc. 3. The second petition will be treated as a supplement to the first petition, and the date of the first petition, May 20, 2015, will be the controlling date for time of filing under AEDPA.

Courts, this Court ordered Respondents to respond. Doc. 7 at 2. Respondents filed a motion to dismiss Springer's petition as time-barred under 28 U.S.C. § 2244(d)(1)(A), or alternatively under Fed. R. Civ. P. 12(b)(6), Doc. 13, and submitted a memorandum in support of that motion, Doc. 14.

## II. DISCUSSION

### A. Statute of Limitations

A person in custody pursuant to a state court judgment may petition a federal district court for a writ of habeas corpus on the ground that he or she is in custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2254. Springer's petition was filed after the enactment of AEDPA. Pub. L. No. 104–132, 110 Stat. 1214 (1996); Doc. 1. Therefore, AEDPA applies to this petition. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); see also Ryan v. Clarke, 387 F.3d 785, 789 (8th Cir. 2004). Under 28 U.S.C. § 2244(d)(1), a petition for writ must be filed within one year. See also McMullan v. Roper, 599 F.3d 849, 851 (8th Cir. 2010); Boston v. Weber, 525 F.3d 622, 624 (8th Cir. 2008). The one-year AEDPA statute of limitations runs "from the latest of" four specified dates, two of which are relevant here:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
> . . .
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2244(d)(1)(A), (C). The timeliness of Springer's petition hinges on which of the above-stated subsections apply. Springer's AEDPA time has run under § 2244(d)(1)(A),[6] but arguably § 2244(d)(1)(C) applies.

---

[6] Applying § 2244(d)(1)(A), Springer's one-year statute of limitations began to run on November 16, 1996, and 328 days had accumulated by the time his Motion to Modify Sentence was denied on October 10, 1997. Respondents concede that tolling applies to Springer's Motion to Modify

6


Springer maintains that he is being held in violation of the Eighth and Fourteenth Amendments and relies on two cases decided in the last five years from the Supreme Court of the United States, Graham v. Florida and Miller v. Alabama.[7] Such reliance would prompt application of § 2244(d)(1)(C)[8] as the proper start date for AEDPA's one-year statute of limitations, but only if certain prerequisites are satisfied. In order for § 2244(d)(1)(C) to apply,

---

Sentence. Docs. 13 at 3, 14 at 4; see, e.g., Wall v. Kholi, 562 U.S. 545, 556 (2011) (holding "that a motion to reduce sentence under Rhode Island law is an application for 'collateral review' that triggers AEDPA's tolling provision"); Joyner v. Dooley, No. 11–5047–JLV, 2011 WL 8194280, at *7 (D.S.D. Nov. 9, 2011) (tolling applied to defendant's request for sentence reduction). Thus, the statute of limitations was tolled from October 10, 1997 to November 19, 1997, the time Springer had to appeal the order. The thirty days to appeal from the filing of the order was November 9, 1997, a Sunday, so Springer's final day to appeal would have been the following Monday, November 10, 1997. S.D.C.L. § 15–6–6(a); see also Fed. R. Civ. P. 6(a)(1)(A) (providing exclusion of "the day of the event that triggers the [time] period"); Wright v. Norris, 299 F.3d 926, 927 n.2 (8th Cir. 2002) (noting Federal Rule of Civil Procedure 6(a) governs calculation of AEDPA time limits). Because Springer did not appeal the order, the clock began to run again on November 11, 1997. Fed. R. Civ. P. 6(a)(1)(A). With only 37 days remaining, the statute of limitations became final at the close of business on December 17, 1997. The state habeas petition, filed on November 2, 2010, and Motion to Correct Illegal Sentence, filed on November 29, 2012, both trigger tolling, but Springer had waited more than twelve years after the one-year statute of limitation had already expired to file those collateral matters. Tolling for both those matters—from November 2, 2010 to April 27, 2015—would still not render Springer's petition in this Court timely.

[7]Springer also contends that his petition should be granted because his co-defendant, Jensen, is also challenging his sentence under Miller. Jensen, also a juvenile at the time of the offense, was convicted by a jury and sentenced to mandated life imprisonment without parole. Jensen, ¶¶ 1, 17, 62, 579 N.W.2d at 614, 616, 624. On May 21, 2015, Judge Brown issued an Order for Stay in Jensen's case pending resolution of Montgomery v. Louisiana, a case now pending before the Supreme Court. Doc. 14-12. The issue in Montgomery is whether Miller has retroactive application to cases on collateral review. State v. Montgomery, 141 So. 3d 264 (La. 2014), cert. granted sub nom. Montgomery v. Lousiana,135 S. Ct. 1546, 83 U.S.L.W. 3149 (U.S. Mar. 23, 2015) (No. 14-280). Jensen's mandatory life sentence, however, implicates Miller, unlike Springer's term-of-years sentence with parole eligibility.

[8]If § 2244(d)(1)(C) did apply, Springer's petition would be timely filed. The clock would begin on May 18, 2010 (the day after Graham was decided), and accumulate 167 days until tolling would be triggered on November 2, 2010, when Springer filed his post-conviction writ for state habeas. The statute of limitations would continue to be tolled through the overlapping collateral review filed on November 29, 2012, and through that appeal and ultimate denial of certiorari on April 27, 2015. The clock would begin to run again on April 28, 2015, thereby accumulating a total of only 189 days until his filing of the federal habeas petition on May 20, 2015.

the new constitutional right asserted must be present in Springer's case, and, if present, the right must have retroactive application to cases on collateral review. The possible retroactive application of Miller to cases on collateral review presently is before the Supreme Court. State v. Montgomery, 141 So. 3d 264 (La. 2014), cert. granted sub nom. Montgomery v. Lousiana, 135 S. Ct. 1546, 83 U.S.L.W. 3149 (U.S. Mar. 23, 2015) (No. 14-280). However, because neither Graham nor Miller renders Springer's sentence unconstitutional, whether Springer's AEDPA time has run becomes academic.

### B. Graham v. Florida Challenge

In Graham, a juvenile was sentenced to life imprisonment for armed burglary and fifteen years imprisonment for attempted armed robbery following a conviction for violation of probation. 560 U.S. at 57. Because Florida had abolished its parole system, Graham had no possible opportunity for early release, excepting executive clemency. Id. The Supreme Court used the categorical approach in analyzing whether the Constitution permits such sentencing schemes, Id. at 61–62, (noting that the challenge was not "to a particular defendant's sentence, but [rather] a sentencing practice itself"). The Supreme Court observed that the age of the offender and the nature and circumstances of the crime were important to consider in determining what sentence is appropriate for juveniles. Id. at 62–69.

The Supreme Court noted many differences between juveniles and adults; juveniles have an undeveloped sense of responsibility, are more susceptible to negative influences, and do not have fully developed character traits deserving of the most severe punishment.[9] Id. at 68; see also Roper, 543 U.S. at 569 (comparing further differences); Thompson v. Oklahoma, 487 U.S.

---

[9]Because the imposition of the death penalty on offenders who were juveniles at the time of their offense violates the Eighth and Fourteenth Amendments, Roper, 543 U.S. at 568, the Supreme Court determined that the most severe and available punishment for juveniles is life imprisonment without the possibility of parole. Graham, 560 U.S. at 70–71.

815, 835–36 (1988) (same). As for the nature of the offense, the Supreme Court reiterated that juveniles "who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving" of life imprisonment without parole as compared to murderers. Graham, 560 U.S. at 69; see also Kennedy v. Louisiana, 554 U.S. 407, 421 (2008) (applying standard to adult defendant); Enmund v. Florida, 458 U.S. 782 (1982) (same). Finally, penological goals did not justify juvenile sentences of life without parole because juveniles are less culpable and less susceptible to deterrence, and because a State should not predetermine that a juvenile is incapable of rehabilitation. Graham, 560 U.S. at 71–75.

The Supreme Court ultimately held that the imposition of life imprisonment without parole for juveniles in nonhomicide crimes is prohibited by the Eighth Amendment. Id. at 74. The Supreme Court did not focus as much on the nominal classification of the sentence, whether a life sentence or term-of-years, but found it unconstitutional to sentence a nonhomicide juvenile offender to a "sentence [that] guarantees [the offender] will die in prison without any meaningful opportunity to obtain release." Id. at 79. The Court clarified the scope of its prohibition:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Id. at 75. Thus, if the State imposes a life sentence on a juvenile nonhomicide offender, it must provide the juvenile "with some realistic opportunity to obtain release before the end of that term." Id. at 82.

Springer's focal contention is that his 261-year sentence with the possibility of parole is a de facto life sentence because his parole is discretionary and does not afford him a "meaningful opportunity" to obtain release. However, the Supreme Court has not ruled that a sentence of life *with* the possibility of parole for a juvenile offender is unconstitutional. See Miller, 132 S. Ct. at 2460 ("[M]andatory life *without* parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" (emphasis added)); Graham, 560 U.S. at 82 ("The Constitution prohibits the imposition of a life *without* parole sentence on a juvenile offender who did not commit homicide." (emphasis added)). And although the Eighth Circuit has not addressed the precise issue raised by Springer, it has noted that Graham's holding is limited by its terms. United States v. Spires, 628 F.3d 1049, 1055 n.3 (8th Cir. 2011) (refusing to "broaden the analysis" of Graham to determine the constitutionality of using prior convictions to enhance the sentence of a convicted adult); United States v. Scott, 610 F.3d 1009, 1018 (8th Cir. 2010) (Graham established a constitutional limit only "on certain sentences"). Many courts, both state and federal, have wrestled with the application of Graham's holding to a term-of-years sentence when the term does not hold promise for parole or release. See, e.g., Bunch v. Smith, 685 F.3d 546, 552 (6th Cir. 2012) ("[C]ourts across the country are split over whether Graham bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy."). However, Springer's sentence involves the possibility of parole.

When a term-of-years sentence includes the possibility of parole, courts have found no Graham violation if the defendant becomes eligible for parole within his or her expected lifetime. See, e.g., Moulayi v. Long, No. SA CV 13–31–JLS (PLA), 2015 WL 4273332, at *14 (C.D. Cal. Feb. 3, 2015) ("Because petitioner's sentence did not mandatorily impose life without parole and allows for the possibility of parole well within his expected lifetime, it does not violate constitutional norms."), report and recommendation adopted, 2015 WL 4304764 (C.D. Cal. July 10, 2015); Silva v. McDonald, 891 F. Supp. 2d 1116, 1131 (C.D. Cal. 2012) ("Notwithstanding the holdings in Roper, Graham, or Miller, this Court is not aware of any controlling Supreme Court precedent which holds, or could be construed to hold, that the sentence at issue here of 40-years-to-life with the possibility of parole [at the earliest at age 55, but not later than age 60], for a juvenile who was 16 years old at the time of the nonhomicide crime, violates the Eighth Amendment."); People v. Perez, 154 Cal. Rptr. 3d 114, 119–21 (Cal. Ct. App. 2013) (holding defendant had a "meaningful life expectancy" because sentence included parole eligibility at the age of 47 and charted cases showing "remarkably consistent pattern" supporting holding); People v. Lehmkuhl, No. 12CA1218, 2013 WL 3584754, at *1–4 (Colo. App. June 20, 2013) (holding that a sentence where the defendant would be eligible for parole just under the age of 67 was not the functional equivalent of life without parole), cert. granted by No. 13SC598, 2014 WL 7331019 (Colo. Dec. 22, 2014); People v. Lucero, No. 11CA2030, 2013 WL 1459477, at *3 (Colo. App. Apr. 11, 2013) (holding that 84-year sentence was not de facto life without parole sentence because defendant would be parole eligible by age 57—"well within his natural lifetime"), cert. granted by No. 13SC624, 2014 WL 7331018 (Colo. Dec. 22, 2014); Angel v. Commonwealth, 704 S.E.2d 386, 402 (Va. 2011) (finding no Graham violation because defendant could petition for conditional release at age sixty).

Consistent with that logic, courts have held that when parole eligibility under a term-of-years sentence occurs close to or exceeds the defendant's life expectancy, the sentence violates Graham. See, e.g., Moore v. Biter, 725 F.3d 1184, 1191–92 (9th Cir. 2013) (finding sentence of 254 years with no opportunity for parole eligibility within defendant's lifetime "materially indistinguishable from a life sentence without parole"); People v. Caballero, 282 P.3d 291, 295 (Cal. 2012) (finding a 110-year sentence equates a de facto life sentence and focusing on whether the parole eligibility date falls outside the defendant's life expectancy); People v. Rainer, No. 10CA2414, 2013 WL 1490107, at *12–14 (Colo. App. 2013) (finding sentence under which defendant would be eligible for parole at the age of 75 was a de facto life sentence), cert. granted by No. 13SC408, 2014 WL 7330977 (Colo. Dec. 22, 2014); Floyd v. State, 87 So. 3d 45, 46–47 (Fla. Dist. Ct. App. 2012) (per curiam) (holding defendant received a de facto life sentence where he would not be eligible for parole until age 85 which exceeded his life expectancy). Similarly, this Court previously concluded that "term sentences virtually guaranteeing an offender will die in prison without meaningful opportunity for release could be considered a life sentence for the purpose of applying Graham or Miller." Boneshirt v. United States, No. CIV 13–3008–RAL, 2014 WL 6605613, at *8 (Nov. 19, 2014), cert. of appealability denied, No. 15–1118 (8th Cir. Apr. 15, 2015).

Given the foregoing, a comparison of Springer's parole eligibility and life expectancy is necessary to determine whether the new constitutional right recognized in Graham affects Springer's case. First, Springer alleges, without support, that he will not be eligible for early release until he has served 62 years of his sentence. Docs. 1 at 5, 3 at 5. Presumably, Springer arrives at this number by only accounting for a one-quarter reduction of his total sentence. S.D.C.L. § 24–15–5. But Springer is mistaken. He can earn good time reductions pursuant to

S.D.C.L. § 24–5–1 before the one-quarter deduction. S.D.C.L. § 24–15–5. Hence, Springer is currently scheduled for parole eligibility on January 26, 2029. Adult Corrections, Offender Locator, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Oct. 4, 2015) (insert "Shawn Springer" into appropriate name fields). On that date, Springer will have served 33 years and will be 49 years old.[10]

Next, Springer alleges that his life expectancy is 78.6 years, but Springer appears to be utilizing the life expectancy of another defendant in another case.[11] Although it is impossible to determine precisely how long any one person has to live, the question comes up regularly enough, including previously before with this Court. See Boneshirt, 2014 WL 6605613, at *10. Using those government resources and actuarial tables, a seventeen-year-old male's life expectancy (Springer's age at sentencing) ranges from the age of 71 to 83. 26 C.F.R. § 1.72–9 at tbl.I (providing 17-year-old male would live 54.9 more years, or to the age of 71.9); 26 C.F.R. § 401(a)(9)–9 (providing 17-year-old male would live 66 additional years, or to the age of 83); Acturial Life Table, SSA, http://www.ssa.gov/oact/STATS/table4c6.html (last visited Oct. 4, 2015) (providing 17-year-old male would live 59.93 more years, or to age of 76.93). Thus, Springer's parole eligibility date is well within his lifetime.

Nevertheless, Springer contends that his form of discretionary parole does not afford him a "meaningful opportunity" to obtain release. The statutes governing his parole eligibility provide that there is no right to parole per se; it is a form of discretionary conditional release that may be granted by the Board of Pardons and Paroles. S.D.C.L. § 24–15–1.1. Shortly after Springer's conviction, South Dakota enacted a new set of statutes granting inmates parole as a

---

[10] Respondents do not dispute this calculation of his parole eligibility. Doc. 13 at 5.
[11] See Doc. 14-10 at 9–10; Springer, ¶¶ 21–22, 856 N.W.2d 460, 468–69 (considering Springer's unsupported argument of his own life expectancy and noting his reliance on State v. Ragland, 836 N.W.2d 107 (Iowa 2013), where that defendant had a life expectancy of 78.6 years).

13

matter of right, still subject to certain requirements and conditions, but such statutes do not have retroactive effect to Springer's case. S.D.C.L. § 24–15A–1 (providing the new statute "do[es] not apply to persons sentenced to prison for crimes committed prior to July 1, 1996"); id. § 24–15A–38 (noting preconditions to parole supervision). Springer seeks to use the difference between the two sets of statutes to support his argument that he is not entitled to a meaningful opportunity for release. Discretionary parole, Springer argues, is a mere "glimmer of hope"—as Judge Gors stated at his sentencing—that does not satisfy the "meaningful opportunity" for release under Graham as would mandatory parole.

Springer's argument, however, misconstrues the Supreme Court's use of the phrase "meaningful opportunity." As stated in Graham and applied to Springer, "[South Dakota] is not required to guarantee eventual freedom to [Springer who was] convicted of a nonhomicide crime." Graham, 560 U.S. at 75. Thus, the distinction between discretionary and mandatory parole has no bearing on the analysis.[12] What South Dakota must do is afford Springer "some meaningful opportunity to obtain release *based on demonstrated maturity and rehabilitation.*" Id. (emphasis added). Springer has that opportunity.

When Springer is 49, he will be "entitled to a hearing with the Board of Pardons and Paroles to present [an] application for parole." S.D.C.L. § 24–15–8. Springer will be paroled if he can demonstrate that he has been confined for a length of time sufficient to rehabilitate himself, is no longer a danger to society, and has secured employment for the expected parole period in an environment where he will be free from criminal influences. Id. Unlike the petitioner in Graham, Springer will have the opportunity to demonstrate that the bad acts he

---

[12] The South Dakota Supreme Court even determined that if Springer's sentence was governed by the current mandatory parole laws, he would not be eligible for release until he is 62 years old—thirteen years longer than what he is eligible for now. Springer, ¶ 24 n.6, 856 N.W.2d at 469.

committed as a juvenile are not representative of his character. Graham, 560 U.S. at 79 (emphasizing that Graham's sentence "guarantee[d] he will die in prison . . . even if he spends the next half century attempting to atone for his crimes and learn from his mistakes"). If parole is denied, Springer will be able to reapply eight months later. S.D.C.L. § 24–15–10. Springer's parole eligibility presents a realistic and meaningful opportunity, perhaps even multiple opportunities, to obtain early release in his lifetime. Springer will have an opportunity to demonstrate that since his incarceration he has matured and has been rehabilitated. Unlike in Graham, it was not determined "at the outset" that Springer was incapable of rehabilitation. Graham, 560 U.S. at 74, 79. Instead, Judge Gors commented at sentencing about the possibility of Springer being rehabilitated and purposefully fashioned a sentence giving Springer a chance for parole, rather than a life sentence without parole. Springer, ¶ 5, 856 N.W.2d at 462–63. Because Springer's sentence does not violate the Eighth Amendment under Graham, there is no need to determine whether Graham applies retroactively to cases on collateral review.[13]

### C. Miller v. Alabama Challenge

Next, Springer argues that he was sentenced in violation of the Supreme Court's holding in Miller. The Supreme Court held in Miller "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460. Miller consolidated the appeals of two juveniles, both of whom had received mandatory life sentences without parole for murders committed at age fourteen. Id. The Supreme Court reemphasized the "significant gaps" that exist between juveniles and adults, and required sentencing courts to consider youth mitigating factors—as well as the "characteristics and circumstances attendant" to the crime committed—

---

[13] Neither the Eighth Circuit nor the Supreme Court has ruled on the retroactivity of Roper and Graham. Martin v. Symmes, 782 F.3d 939, 942 n.4 (8th Cir. 2015).

when imposing a state's harshest sentence on juveniles. Id. at 2467–68. Because the sentences imposed in Miller were mandatory and wholly precluded consideration of mitigating youth factors, the Supreme Court invalidated the sentences under the Eighth Amendment.

The constitutional right newly recognized in Miller does not render Springer's sentence unconstitutional. Although Springer was a juvenile at the time of his crime, he was not convicted of a crime that mandated life without parole. The *potential* maximum for Springer was life imprisonment, but it was not mandatory. S.D.C.L. § 22–6–1(3) (1996). The Supreme Court noted in the very first paragraph of Miller that there is a significant difference between mandated life imprisonment without the possibility of parole and the lesser sentence of "life *with* the possibility of parole." Miller, 132 S. Ct. at 2460. Additionally, Judge Gors did consider mitigating youth factors when sentencing Springer. At Springer's sentencing, Judge Gors stated that despite Springer's contributions to the planning and execution of the robbery resulting in Michael Hare's murder, Springer did not shoot the victim and rehabilitation was possible because of his young age.

The Eighth Circuit has held that Miller does not have retroactive application to cases on collateral review. Martin, 782 F.3d at 943; see also Thompson v. Roy, 793 F.3d 843, 845–47, n.2 (8th Cir. 2015) (reaffirming Martin's holding). The issue of Miller's retroactive application to collateral review matters is now pending before the Supreme Court in Montgomery v. Louisiana. State v. Montgomery, 141 So. 3d 264 (La. 2014), cert. granted sub nom. Montgomery v. Lousiana, 135 S. Ct. 1546, 83 U.S.L.W. 3149 (U.S. Mar. 23, 2015) (No. 14-280). But see Thompson, 793 F.3d at 845 n.2 (observing that the ultimate issue in Montgomery may not be reached because the Supreme Court requested the parties brief the additional question of jurisdiction). Rather than awaiting the forthcoming decision in Montgomery, Springer's petition

is subject to dismissal because he did not receive a sentence of life without possible parole as proscribed by Miller.

### D. Certificate of Appealability

When a district court issues an order under § 2254 adverse to the applicant it "must issue or deny a certificate of appealability." Rules Governing Section 2254 Cases in the United States District Courts, Rule 11. This Court may issue a certificate of appealability only if a petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a substantial showing requires that the petitioner show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002). Although courts have disagreed about whether Miller should be applied to a term-of-years sentence, no reasonable jurist could find that Springer was sentenced under a statute that mandated life imprisonment without parole. And although courts have disagreed about whether Graham applies to a de facto life sentence without a chance of parole, no reasonable jurist could find that Springer's sentence precludes him from the possibility of parole within his lifetime, or that his eligibility for parole does not afford him the meaningful opportunity to demonstrate maturity and rehabilitation to the parole board.

### III. CONCLUSION

Therefore, it is hereby

ORDERED that Respondents' Motion to Dismiss, Doc. 13, is granted. It is further

ORDERED that Springer's Motion for Evidentiary Hearing and Appointment of Counsel, Docs. 6, 11, and Motion for Transcripts and Polygraph Test Results, Doc. 17, are denied as moot. It is further

ORDERED that no certificate of appealability shall issue.

DATED this 28th day of October, 2015.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE